UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DORIS CRIM, | ) | Case No.: 1:12 CV 3065 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| VILLAGE OF BELLVILLE, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently before the court are: (1) Defendant Village of Bellville's ("Defendant" or the "Village") Motion to Dismiss for Failure to State a Claim, Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 4); and (2) Defendant's Motion to Strike Portions of Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 5). For the following reasons, the court denies Defendant's Motion to Dismiss and denies Defendant's Motion to Strike Portions of Plaintiff's Complaint.

### **I. FACTS AND PROCEDURAL HISTORY**

This case arises from the termination of Doris Crim ("Plaintiff" or "Crim") by the Village. The instant lawsuit was filed on December 17, 2012, after Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). (Compl. at ¶ 4, ECF No. 1.) Plaintiff was at one time a part-time police officer for the Village and began her employment at some time around May 14, 2008. (Compl. at ¶ 6, ECF No. 1; Mot. to Dismiss at 1, ECF No. 4-1.) Plaintiff's employment history record shows that she continued to work as a part-time officer for the Village until her employee status was changed to the position of auxiliary employee on June 30, 2010. (Ex.

8, ECF No. 1-3.) During the summer of 2010, Plaintiff recorded the hours she worked on the "auxiliary roster." (Compl. at ¶ 7, ECF No. 1; Mot. to Dismiss at 1, ECF No. 4-1.) The "auxiliary roster" is used to record auxiliary officers' hours, while part-time and full-time officers record their hours on a different log. (*Id.*) Plaintiff alleges that she signed the "auxiliary roster" to record the time she spent filling in for her Sergeant, not because she was an auxiliary officer. (Compl. at ¶ 7, ECF No. 1.) Plaintiff disputes that she was in fact an auxiliary officer at the time of her termination and maintains instead that she was a part-time officer until September 21, 2011. (Compl. at ¶ 13, ECF No. 1.) Plaintiff's status as either a part-time officer or auxiliary officer determines whether or not she may appeal her termination to the Village Council, as discussed below.

Plaintiff alleges that in August, 2010, she "had medical conditions that affected her ability to perform her duties as a police officer and affected her ability to perform major life functions." (Compl. at ¶ 8, ECF No. 1.) As a result of these "medical conditions," Plaintiff was hospitalized and "began undergoing therapy in August of 2010." (*Id.*) Plaintiff was hospitalized from August 2, 2010, to August 9, 2010. (Ex. 5, ECF No. 1-3.) Plaintiff alleges that she was "required to surrender her firearm while on medical leave." (Compl. at ¶ 10, ECF No. 1.) She states further that in April, 2011, she presented a letter from Behavioral Health Care to Police Chief Ron Willey ("Willey") at his request, indicating she was medically able to return to active duty from unpaid medical leave. (*Id.*; Ex. 6, ECF No. 1-3.) Plaintiff alleges that Willey would not permit her to return to active duty. (Compl. at ¶ 10, ECF No. 1.)

On June 21, 2011, Plaintiff received a "Notice of Pre-Dismissal Conference" from Willey, providing three reasons for the conference: "1. Failure to provide appropriate documentation clearing you to return to police duties; 2. Failure to maintain your firearms qualification for 2010

and 2011; [and] 3. Failure to appear to work since June 2010." (Ex. 7, ECF No. 1-3.) The notice also stated that, pursuant to Ohio Revised Code ("R.C.") § 717.161(A), Mayor Darrell Banks would determine if the dismissal was appropriate. (*Id.*) Plaintiff attended the Pre-Dismissal Conference on June 27, 2011, at Bellville Village Hall along with her present counsel. (Compl. at ¶ 11, ECF No. 1.) On July 22, 2011, Plaintiff received notice that she was being terminated pursuant to R.C. § 737.161(A). (Ex. 4, ECF No. 1-3.)

Plaintiff sent a notice of appeal to the Bellville Village Council (the "Council") on July 25, 2011, to "appeal the July 22, 2011 judgment of Mayor Darrell Banks of the Village of Bellville, Bellville, Ohio; [sic] dismissing myself from the Bellville Police Department." (Ex. 3, ECF No. 1-3.) Plaintiff filed the notice of appeal with the Council pursuant to Ohio Revised Code § 737.19, which she states is "the applicable section of the code governing Appellant's termination as a paid part-time police officer." (Compl. at ¶ 13, ECF No. 1.) Plaintiff also presented a screenshot of the Village Police Department's roster from its website to the Council showing her listed among the part-time and full-time officers. (Compl. at ¶ 14, ECF No. 1; Ex. 1, ECF No. 1-3.) She alleges further that the Council "declined to accept jurisdiction of the appeal under R.C. [§] 737.19 leaving [§] R.C. 737.161(A) as the sole reason for Ms. Crim's termination." (*Id.*) Plaintiff states that she "timely filed her appeal to the Court of Common Pleas on August 10, 2011." (*Id.*) The Richland County Court of Common Pleas heard Plaintiff's appeal and found that there was "sufficient undisputed evidence on the record to determine that Appellant Doris Crim was, at the time of her discharge, an auxiliary officer of the Bellville Police Department." (Mot. to Strike at 1, ECF No. 5-1.) As such, the Richland Court found that Plaintiff was properly discharged pursuant to Ohio Revised Code § 737.161, which does not afford the right of appeal to the Council for an auxiliary officer who has been terminated

- 3 -

by the Mayor; thus, she was not entitled to a hearing before the Village Council. (Ex. 2, ECF No. 4-2.)

Plaintiff claims that "Defendant has illegally circumvented the ADA [Americans with Disabilities Act ("ADA")], [§] 4112 of the ORC and ORC §737.19," and that Defendant discriminated against her based on her disability or based on Defendant's perception of Plaintiff as being disabled. (Compl. at ¶¶ 20; 25; 26; 31; 41.) She alleges that "Defendant attempted to change the status of officer Crim from Part-time to Auxiliary by first articulating it on June 21, 2011 in her Pre-Disciplinary hearing notice." (*Id.*) Furthermore, she alleges that "Defendant has fabricated that Plaintiff was actually an Auxiliary Officer that could be fired by the Mayor with no right to appeal." (*Id.* at ¶ 22.) Finally, she alleges that "[a]t the time Plaintiff filed her appeal to Village Council, she was classified as a part-time officer with the Respondent." (*Id.*; *see* Ex. 2, 8, ECF No. 1-3.)

## II. STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LAW AND ANALYSIS

#### A. Motion to Strike Portions of Plaintiff's Complaint

Issue preclusion, or collateral estoppel, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as a part of a different claim or cause of action." *Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012). In deciding

whether or not an issue is precluded, four elements must be present: (1) the precise issues must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

Defendant moves to strike several portions of Plaintiff's complaint dealing with Plaintiff's employment status, in particular whether she was an auxiliary officer or a paid part-time officer at the time of her dismissal. (Mot. to Strike at 1-2, ECF No. 5-1.) Defendant argues that Plaintiff is precluded from re-litigating her employment classification as a volunteer auxiliary officer because this issue has already been decided in the Richland County Court of Common Pleas. (*Id.* at 2.) Plaintiff responds by arguing that federal law determines whether or not she is an employee under the ADA, not the decision of the Richland County Court of Common Pleas.[1] (Pl. Resp. at 3, ECF No. 8.) Thus, the parties' dispute pertains to the first element of issue preclusion stated in *Georgia-Pacific Consumer Products LP*. Defendant's argument is not well-taken. The Richland County Court of Common Pleas determined that there was enough evidence on the record to conclude that Plaintiff was an auxiliary officer and properly terminated pursuant to Ohio Revised Code § 737.161. (Ex. 2, ECF No. 4-2.) However, this does not determine whether or not Plaintiff can be considered an employee under the ADA or Ohio Revised Code § 4112. In *Bryson v. Middlefield Volunteer Fire Dept., Inc.*, 656 F.3d 348 (6th Cir. 2011), the Sixth Circuit held that in order to determine if an

---

[1] Plaintiff also puts forth this argument in response to Defendant's Motion to Dismiss. As discussed below, Plaintiff's response requires a different analysis in the context of Defendant's Motion to Dismiss than it does in the context of Defendant's Motion to Strike. Therefore, Plaintiff's response is discussed separately as it relates to each of Defendant's Motions.

employment relationship exists between parties for the purposes of Title VII claims, courts must apply the "common law agency test." *Bryson*, 656 F.3d at 352. This test requires that when determining whether an employment relationship exists between parties, courts must consider and weigh all aspects of the relationship. including. among other factors: remuneration, the skills required, and the location of the work. *Id.* at 352-53. However, no single factor is conclusive. *Id.* at 355. Therefore, the Richland County Court of Common Pleas' conclusion is not dispositive of the issue presented here: whether or not Plaintiff may be considered an employee for the purposes of the ADA and Ohio Revised Code § 4112. The Richland County Court made the determination that Plaintiff was properly discharged as an auxiliary officer pursuant to Ohio Revised Code § 737.161 and that she was thus not entitled to an appeal by the Village Council. (Ex. 2, ECF No. 4-2.) The Richland Court did not determine whether or not she may be considered an employee for the purposes of the ADA or the Ohio Revised Code § 4112 by applying the "common law agency test." (*Id.*) Therefore, the Richland County Court of Common Pleas' decision does not preclude the determination of whether Plaintiff was classified as an employee under the ADA and Ohio Revised Code § 4112, and Defendant's Motion to Strike Portions of Plaintiff's Complaint is denied.

**B. Motion To Dismiss For Failure To State A Claim**

Ohio courts interpret Ohio Revised Code § 4112 as following the same analysis as the ADA, and therefore disability discrimination claims brought under both Ohio Revised Code § 4112 and the ADA may be analyzed together. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (holding that the plaintiff's state and federal discrimination claims under Ohio Revised Code § 4112 and the ADA, respectively, may be solely analyzed under the ADA because Ohio case law tends to suggest that Ohio Revised Code § 4112 entails the same legal analysis as that under the

ADA). The Sixth Circuit has held that "[a] person seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1179 (6th Cir. 1996)). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Defendant puts forth three arguments in support of its Motion to Dismiss. (Mot. to Dismiss at 3-8, ECF No. 4-1.) First, Defendant argues that Plaintiff was a volunteer auxiliary officer and not a part-time or full-time officer. (*Id.* at 4.) Thus Plaintiff was not an employee as defined by the relevant statutes. (*Id.*) According to Defendant, Plaintiff cannot establish that she was an employee of the Village as required by the *McKay* test because the Richland Court determined that she was properly terminated as an auxiliary officer. (*Id.*) Plaintiff argues that federal law determines whether or not she is an employee under the ADA, not the decision of the Richland County Court of Common Pleas. (Pl. Resp. at 3, ECF No. 8.)

As previously discussed, in *Bryson*, the Sixth Circuit held that courts must incorporate the "common law agency test" when determining whether an individual is an employee under Title VII. *Bryson*, 656 F.3d at 352. In considering Defendant's Motion to Dismiss, the Court must construe all of Plaintiff's factual allegations as true. *Twombly*, 550 U.S. at 570. Plaintiff alleged in her Complaint that she was an employee of the Village at the time of her termination, therefore she has

established that she was employed by the Village by adequately alleging this fact. (Compl. at ¶ 22, ECF No. 1.) Additionally, the Richland Court's determination that Plaintiff was properly discharged as an auxiliary officer pursuant to Ohio Revised Code § 737.161 does not affect whether or not she may be considered an employee for the purposes of the ADA or Ohio Revised Code § 4112. The Richland Court's decision was limited to the circumstances pertaining to Plaintiff's termination and not her classification under the ADA or Ohio Revised Code § 4112. (Ex. 2, ECF No. 4-2.)

Second, Defendant argues that Plaintiff was not qualified for the position because she failed to maintain her firearms qualifications for the years 2010 and 2011. (Mot. to Dismiss at 6, ECF No. 4-1.) Plaintiff responds by alleging that her failure to maintain her firearms qualifications was due to the fact that she was required to surrender her firearm while on medical leave. (Compl. at ¶ 10, ECF No. 1.) Plaintiff's argument is well-taken. In order for a plaintiff to recover under the ADA, she must "do more than show that he is 'disabled' within the meaning of the statute." *Burns v. Coca-Cola*, 222 F.3d 247, 256 (6th Cir. 2000) (quoting *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir.1998)). A plaintiff "must also establish that [s]he is a 'qualified individual with a disability' by showing: (1) that [s]he satisfies prerequisites for the position [s]he holds or desires, such as possessing the appropriate educational background, employment experience, and skills; and (2) that [s]he can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* (brackets omitted).

Under the *Burns* test, Plaintiff has met her burden of establishing that she is a qualified individual. Plaintiff alleges that the only reason she was unable to maintain her firearms qualifications for 2010 and 2011 was because Defendant required her to surrender her firearm while on medical leave. (Compl. at ¶ 10, ECF No. 1.) There is nothing indicating that Plaintiff would have

been unable to re-gain her firearms qualifications if given the opportunity, as she had done in the years preceding her termination. Therefore, Plaintiff has pleaded sufficient facts demonstrating that Defendant's contentions about her firearms qualification are without substance as she had maintained her firearms qualification during the years she worked for the Village prior to 2010 and 2011.  In addition, by providing documentation from her healthcare provider that stated she is "mentally capable and stable to be able to work within her college degree program, which is criminal justice," she has pled additional facts supporting her qualification for the position. (Ex. 6, ECF No. 1-3.) Finally, Plaintiff also had over three years of work experience with the Village, as she began working for the Village around May 14th, 2008. (Compl. at ¶ 6, ECF No. 1; Mot. to Dismiss at 1, ECF No. 4-1.)

Third, Defendant argues that Plaintiff failed to request a reasonable accommodation. (Mot. to Dismiss at 7, ECF No. 4-1.) Plaintiff responds by alleging that "[p]resenting a release from health care providers with no restrictions to return to work to one's employer is a reasonable request for accommodation." (Pl. Resp. at 10, ECF No. 8.) However, Plaintiff clearly states that she had no restrictions to return to work. (*Id.*) She does not allege that she was permitted to return to work but required accommodations to do so. Absent any restrictions upon her return to work, there would be no need for Defendant accommodate her. Therefore, Plaintiff did not really seek, nor did she need to seek, a "reasonable accommodation." Consequently, Defendant's arguments do not demonstrate that Plaintiff's case must be dismissed for failure to state a claim, and therefore Defendant's Motion is denied.

## IV. CONCLUSION

For the foregoing reasons, the court denies both Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 4) and Motion to Strike Portions of Plaintiff's Complaint (ECF No. 5).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*

CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

July 12, 2013